And our last case for today is 24-1237 Federal Express Corporation v. Qualcomm Incorporated. Good morning, Your Honors. Jeff Berkowitz for Federal Express Corporation. So this case actually, I'll begin with the unable to term in Claim 26. There are two claim construction issues with regard to Claim 26. If you agree with either one of them, that would be grounds for a reversal as to Claims 26 through 30. There's also a substantial evidence question with regard to Claim 9. But I'm going to start, as I said, with unable to. So unable to is in Claim 26. And in 26, it recites an ID node unable to communicate directly with the server. And the plain meaning is incapable. There doesn't appear to be a dispute that it's incapable. This means that the ID node is physically incapable of communicating directly with the server. That's been our position all along. The specification actually supports this and explains that this arises through a lack of circuitry or a lack of code. You say it's physically In the system, yes, it can't do that. If you take it out of the system, then perhaps you can, you know, add functionality to something and then it could do it. Yes, there is a boundary there. I'm glad you raised this because this is actually the point of this, right? Unable to is narrow than not operative, right? A device can be unable to do something, that is unable to do something, excuse me, can be non-operative, right? It doesn't have that function, right? That doesn't, at the same time... Sorry, if it's unable, it has to be not operative too, right? Thank you. Thank you. That's exactly what my point is. But it's not vice versa, right? And that's what this is about. This is a narrower term than non-operative. And that's been your position consistently at the board and in front of us? Yeah, yeah. Because of the contention, I'm sure you know, is that you've flipped your position here. I think what maybe you're referring to is in our preliminary patent owner response, right? We lumped these all together and said that it's incapable, right? And that is true. But our position with respect to unable has not changed. Our position with respect to an inoperative, yes, has changed. Can you walk us through where below you made this argument? Because I think there's a possible forfeiture of the argument. So can you walk us through where you've made this argument in particular? Which... I think the unable to argument that you're just trying to make. That's... We have consistently held on, and I know this is in our blue brief in 55, right? We've consistently taken the position that unable to means incapable. How about that lack of code can be unable? Do you make the argument that a lack of code can... Yes, we do. It's in our... It's in 55 and 56 of our blue brief. We did it actually, I believe, in the Surapply as well. Okay, so what are... Okay, we'll... Yes, I'm sorry. I know I have... That we made this in the Surapply as well. Because here's what the point really of this is all about, right? What we started with was a situation where the reference that Benson referenced that Qualcomm relies upon, both devices, the master unit and the remote server, excuse me, the remote sensing unit, both have the same hardware and software. So we started and made... We made... We consistently took the position that unable to meant incapable, right? What happened was, why did we do that? And we specified in that example in our... This was actually I think in our preliminary response. We specified that... We specified an example, excuse me. Can you give us a JA page so that we can look at what you're recounting to us right now? Sure. I think this may go to your other question as well, but in appendix 1206 in the Surapply, we specified that although an ID node and master node may be implemented with apparently programmed user access device, this does not mean the inverse is true. We made a number of instances where we admittedly, we contrasted the user access device, which is really what the crux of the board's opinion was, right? The board's opinion that, and I don't want to go past what your question was. If I didn't answer it, I want to make sure that you got the answer that you wanted in terms of the boundaries. Maybe. Let me ask you, and this I think is what Judge Cunningham's asking you too. At the red brief at 45 is where they say you made the opposite argument below, and what you're arguing to us is entirely new and waived. Is the response to that look at 1206, which is the appendix page you just... So I think if you look at it, it's 1050 actually, where we made the argument regarding the lack of physical capability. And that's in our CER reply. So your response to the waiver point is not look at 1206, it's look at 1050. I'm sorry. Yes. Yes. I apologize. Yes. 1050 is where to look, not 1206. 1050 is where we initially made this argument, because I think they were arguing that we never made an argument on lack of code, right? We made the argument on lack of capability in 1050, and we made the argument on, excuse me, on unable to in the CER reply that you're talking about in 1206. I think that's what I just referred to, right? So look at both. Yeah. I'm sorry. The first one is lack of capability. I'm sorry. And lack of capability wasn't restricted to circuits. And the second one is, excuse me, also was more specific to code. And again, this goes back to the point that Benson, the device had both the same code and the same, excuse me, the same hardware and code in both. We came back and said, but wait a second, we were using unable to at that point and arguing over the circuitry. How can you say it's unable to if they both have the same circuitry? Their response was to make this new argument about that, well, no, that unable to, excuse me, covers also not operative. And that's where we believe that the board made the mistake in its final written decision. Why don't we turn to the short-range communication? I'm sorry? Can we turn to the short-range communication path argument? Yes, sure. I know there are questions on that. Okay. On a short-range communication path, Your Honor, our, I believe everything is clear on this point where the specification defines three ranges. It defines the short, medium, and longer range. And in connection with those ranges, it provides various different examples of each of the different ranges. And what the board was looking for, and there are various different citations to the record about the various differences in the structure, as well as the function of the different ranges. You have only one example that you point to in column 11 where the specification calls out the WLAN as exemplary of a medium range. Is there anywhere else in the intrinsic evidence that there's discussion of whether the WLAN is short, medium, or longer? Sure. So that's where it's called out as an example of medium range. That's correct. In our brief, I think there are more than seven times where medium range is actually described as contrast to short as well as longer. Right, but not specifically calling out the W. Well, it's our position, of course, that every time it talked about medium, it was also talking about WLAN. That's the example of, excuse me, of medium. But silently, because they don't at least say the letters WLAN. Well, it doesn't repeat the other examples every time either. Isn't it very clear that in column 11, they're just talking about an exemplary embodiment? They're not, the patentee's not doing anything to say that in all embodiments I'm claiming that WLAN has to be medium. No. What the specification is explaining, I think, there is certainly that's an embodiment. At the same time, this particular use of medium was used, excuse me, medium is used consistently throughout the specification, just like the others were used throughout the specification. I think maybe more to the point here is that the board's relative construction for this, which is it's just relative, means essentially that there's no boundary to short, such that short can actually be the same as longer in the specification. In other words, and we explained this, in other words, you could have a short that's a cellular, for example, as long as there's something more, excuse me, something that is longer, which perhaps could be satellite. But that essentially means that there's nothing left to short. So there's no boundary. I don't see that conclusion in that particular embodiment. The short just happens to be shorter than the longer, which may be a satellite. There's no support in the specification for saying that cellular could be short. There's absolutely, the structures here that correspond to these, the medium and longer range interface is different from the structure that is for the short range interface. And so there's no example in a specification that supports that broader read. So that's why we say it would be inconsistent with the specification. And so your best intrinsic support for the reading that you're proposing is really pointing us to columns 11 and maybe column 26 of the patent. Is that accurate? No, I think there's, well, I apologize, but there are many other instances where medium is used. And we have this in our brief in 46. Do you have the patent in front of you? Why don't you turn to it and tell me if columns 11 and 26 are your best? Oh, yeah, I'm sorry. So certainly 11, because that's where it's first stayed out. And 26 is, yes, another instance, right? But I think I know in our brief we have more than that. We have at least seven additional citations to these comparisons. Okay, you're into your rebuttal. Thank you. Good morning, Your Honors, and may it please the court, Mark Garrett for Qualcomm. I'll start with unable unless you want to maintain continuity and start with short range. I'd like you to start with short range if you could. I'll start with short range then. As Your Honor pointed out, the primary support for their position is in column 11. And it's describing, I'm going to use the term YLAN as opposed to WLAN because it goes a little quicker, is an example of medium. Their position has been that that exemplary categorization is binding. And it can't be short. And in the gray brief, they go so far as to say it can't be long either. And the problem with that is with respect to the latter piece of it, that it can't be long. Oddly, there are a few instances where Wi-Fi, which is the other exemplary medium range communication path, is called longer. That appears at column 89, lines 55 to 63, which they cite on page 46 of the blue brief. There are other sites too. But the point is, from that alone, you can see that it's not true to say that once something is in the medium bucket, it has to stay in the medium bucket. That's not even what the patent does. Now, that's going the other way from us. But it doesn't change the fact that medium is not definitional. And in the claims, they can't point to anything other than that term short that conflicts with the use of YLAN as the communication path between the sensor node and the master node. And that really should be what this is about. Why is there a substantive conflict with using YLAN for that communication path? And there isn't anything that they pointed to, either in the claims or in the specification, that would support that contention. What about column 26? Isn't that helpful to them as well? So column 26 concerns a description of the various structural interfaces of the master node. It begins by describing the short interface. The example it gives is Bluetooth. It then goes to the medium interface. The example it gives is Wi-Fi, concludes with the longer interface. And the example it gives is cellular. Those are all still examples of the hardware, which isn't in the claim itself, but the hardware in this example master node. Now, the short of the master node is designed to communicate with the short of the ID node. And in columns 15 to 17, that's where the comparable description of the example ID node appears. Bluetooth is given as the example in that portion of the specification. So in the sense that they have used medium in contrast with short and longer, it supports their position. But there's nothing in that particular column 26 description that says these are the only examples of medium, short, and longer that can be used. And there's nothing about the description of the medium portion of it that's satisfied by the Wi-Fi interface and radio that says you couldn't use that kind of a structure or the short if your longer remains cellular. What is your best intrinsic support that YLAN can be short range? Like, what would you point to as your best support for that? I would stick with column 11, where it's describing YLAN as merely an example of medium range. I would also point the court to probably columns 15 to 17, about a third of the way down through 17, which is a pretty comprehensive description of the characteristics of the example ID node. And what you will see in there is not a description of YLAN, but a description of structures and functions that don't exclude YLAN. And so inherent in your argument is that it has to be a relational term. Is that kind of inherent in the argument you're making to us? I would say yes, it is inherent in the argument we're making. And to his point that cellular could be short, I understand extending the logic of our argument to that seems maybe a little much. The board's decision stated on appendix 41, which we cite on page 32 of our brief, was that they were deciding that there was no manifest expression of an intent to exclude YLAN or other quote medium range end quote communications from the recited short range communication path, so long as the longer range was in fact longer. So deciding that the board was correct wouldn't expose necessarily cellular as a short range path because it wasn't one of the medium examples that the court referenced in its finding. I'll move to unable if. I would, if my colleagues are done on the short term, help me understand what it is you think is new and was waived. I think to level set, it may help to just go back and understand what went on. We mapped Benson's disclosure of this slave mode for its remote sensor unit to not operative to and to unable. They saw that and said, wait a minute, we think there's a difference in meaning between those phrases. Their expert at appendix 9328 to 9329 said, I'm going to explain to you the difference in these terms. Here are examples of things that are not operative to do that, but that are not unable. So he's drawing a contrast between those two phrases. His fourth example, which begins in a further example, spans appendix 9328 to 9329. He says, in a further example, a device that has the circuitry necessary to communicate with the server, but lacks the programming to presently do so. That's sort of the sentence. And the point of that sentence is, this is an example of something that is able, in other words, is not unable, but it is not operative. So to restate it, because it may be the first time you thought about it, has the circuitry, yes, has the circuitry, lacks the code, lacks the programming. That is not unable. How did that transcend through the case? They cited to that paragraph at 1045 of the appendix, where they said, here's what not, here's what unable means. It means programmatically disabled. That was their interpretation of his fourth example. But then at 1050, they looked to Benson and they said, you got it wrong. You got it wrong because Benson has the same circuitry that would allow it to communicate with the server. It is therefore not unable. Full stop. Not that it has the same circuitry and it possesses the code, which they would have had to have said if their argument weren't new. The board said on appendix 12, we agree with Qualcomm's position that there is a conflict between your version of unable and what we find in the specification at column 110, those two smartphone embodiments. And we find that it's inconsistent with Dr. Almiroth's testimony that unable means as the circuitry lacks the code. Qualcomm, you win. Now they are saying, uh-oh, wait a minute, this isn't right. We want to fold in that first smartphone 200 embodiment into our definition of unable so that we don't have to deal with this conflict that upset the board and let Qualcomm win. And now they're saying, oh, yes, well, wait a minute. If it has the circuitry, it can still be unable to if it also lacks the code. That's what's new. Before they said, yes, circuitry, no code, not unable. That's from Almiroth at 9328 to 29. And now they're saying, no, no, that's not unable. So that's the problem with their position. If I understood your friend on the other side, I think he told us our position on unable to is consistent, but we did change our position on not operative to. Is that how you see it? Not at all. What's that? Not at all. You're disagreeing with them. I disagree with them. They absolutely changed their position on unable. And this clearest view of that, I almost said starkest, and I thought, I can't say that. The most clear view of the fact that they changed it is if you spend a little bit of time with that fourth example from Dr. Almiroth's testimony on appendix 9328 to 29, and you understand that there, right there, they are saying that's not unable. Today, they are saying that is unable. That is on the head of a pin. He didn't raise the other issues. I don't know if that means I do not speak to him. Well, you can talk about him, but if you talk about him, that means he gets to do rebuttal. If I don't, he doesn't. If you don't, he doesn't, so. If there are no further questions, I'll yield my time. Thank you. Really just have two quick points. Thank you. With respect to the first point on short versus WLAN, you didn't hear any example, of course, where short is used as WLAN, but you heard those examples where WLAN could be longer, right? So medium and longer in the specification and the description of the master node, it describes that in addition to short range, you also have longer range, medium and longer range, excuse me. And that's what I was referring to before, that there are multiple instances. With respect to Dr. Almiroth's declaration that you just heard about, which was at, I think it's 95, 36, excuse me, 93, 28 of the appendix 93, 28, 29, I think it's very important to understand the context of each of his different examples. He starts out with the principle that a person of ordinary skill in the art would understand a device not operative to communicate with a server, e.g. through programming may still be capable of communicating. So he starts out with this principle that everything is capable in my example, and I'm going to give you examples of instances where it could be made not capable. He doesn't say to take out that, excuse me, unable to means the same. And each of his examples, he goes through this explanation. With respect to the example in question, if you will, very quickly, I will just explain that that's simply an example of a device that's physically capable because that's the context, but presently performing, but presently refraining, excuse me, from performing the function. That's exactly what he said. And this is established by the subsequent sentence. Actually, it says, in any of these cases, however, the device is still able to communicate with the server, whether it does so at different times or different functions with different data or is programmatically reconfigured. So you can take a device, a non-operative device, but it has the capability and you can change it so that it's capable. It's not adding anything in that regard. It's switching something. Thank you. Thank you. Case is submitted.